UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| APEX ENERGY SOLUTIONS OF SEATTLE, LLC, <br><br>  Judgment Debtor, <br><br> v. <br><br> CHRISTPOHER L. HUBBARD, <br><br>  Judgment Creditor and Plaintiff, <br><br> v. <br><br> MICHAEL FOIT and PAUL LEWIS, <br><br>  Defendants. | Case No. C24-672-RSM <br><br> ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on the parties' Motions for Summary Judgment. Dkts. #34 and #38. Neither party has requested oral argument, and the Court finds that it can rule without oral argument. For the reasons below, the Court GRANTS Plaintiff's Motion and DENIES Defendants' Motion.

## II.  BACKGROUND

**A. Underlying Litigation**

This case comes from Plaintiff's ongoing efforts to collect his awarded judgment in the underlying King County Superior Court Case, No. 19-2-13540-9 SEA. Dkt. #39 ("Downs

Decl.") at Ex. 8.

Defendants founded Apex Energy Solutions (the "Apex conglomerate") over twenty years ago and Apex Energy Solutions of Seattle, LLC ("Apex Seattle"), in August 2017. *Id*. at Ex. 1. Defendants Foit and Lewis were the CEO and CFO of Apex Seattle, the only members, managers, or otherwise controlling figures of the company, and owned 88% (Foit) and 12% (Lewis) interests. *Id*. at Exs. 2-4; Dkt. #35 ("Foit Decl.") at ¶ 5.

Defendant Foit hired Plaintiff at Apex Seattle on July 25, 2025. *Id*. at Ex. 5. While employed, Defendants "controlled and made all decisions regarding compensation of [Plaintiff] Hubbard, including the amount of his salary, annual performance bonuses, year-end EBITA bonuses, commissions, and chargebacks . . . [and] when and if Hubbard was paid." Dkts. #38 at 3; #39-6 ("Lasko Dep.") at 18:12-23 (stating payroll concerns went to Defendant Foit).

On May 21, 2019, after terminating Plaintiff's employment, Defendants decided to file suit (as Apex Seattle) against Plaintiff in King County Superior Court for several claims. *Id*. at Ex. 3 ("Foit Dep.") at 19:14-16 and Ex.6 ("Lasko Dep.") at 14:4-7. Plaintiff filed counterclaims for willfully withholding wages.

On August 19, 2021, the jury reached a verdict for Plaintiff, finding that Apex Seattle willfully withheld Plaintiff's W-2 wages of $17,808.05, commission of $15,480.94, and EBITDA bonus of $115,000, and that Apex Seattle unlawfully rebated Plaintiff's commissions as "chargebacks" for $18,529.88. *Id*. at Ex.7 ("Verdict Form"). On October 6, 2021, the trial court entered a total judgment of $532,636.16 for Plaintiff, which would "bear interest at the rate of 12% per annum in post-judgment interest from the date of entry until paid in full." *Id*. at 8, "Judgment."

Due to all of Apex Seattle's assets being sold during litigation (detailed below), Apex Seattle did not pay the judgment. On December 20, 2021, the trial court granted Plaintiff's

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 2

motion to initiate supplemental proceedings under RCW 6.32.270. *Id*. at 16. After two years of this, including examinations and interrogatories, the trial court granted Plaintiff's motion to add Defendants Foit and Lewis as third-party defendants for violating Washington's Voidable Transfers Act, RCW 1940 *et seq*. *Id*. at Ex. 19.

After adding Defendants, Plaintiff successfully moved for an expedited trial date on the sub-proceedings of March 25, 2024. *Id*. at Ex. 20. Around two weeks later, Defendants moved to disqualify the judge, which was denied on October 19, 2023. *Id*. at Exs. 21-22. Defendants then moved to dismiss for lack of personal jurisdiction, which was denied on April 30, 2024. *Id*. at Ex. 23.

On May 15, 2024, Defendants removed these sub-proceedings to this Court. Dkt. #1. On May 20, 2024, Plaintiff moved to remand, which this Court denied on August 9, 2024. Dkts. #7 and #21.

On November 11, 2024, Plaintiff filed a summary judgment motion, which he withdrew on November 27. Dkts. #26 and #30.

On March 31, 2025, Defendants filed their instant Motion for Summary Judgment. Dkt. #34. Plaintiff filed his instant Motion for Summary Judgment on April 1, 2025. Dkt. #38.

**B. Apex Sale**

During the above state litigation, in 2020, Defendants sold the Apex conglomerate to Great Day Improvements, LLC ("Great Day"), including company-owned Apex Seattle and the conglomerate's proprietary marketing system, patented software and technology, all branding logos and trademarks, and all assets. *Id*. at 1-2. This sale closed on November 18, 2020. Dkt. #39-11, "Asset Purchase Agreement." This was "structured as an aggregate sale through which Great Day agreed to pay a lump sum amount [of roughly $23-24 million] for the entirety of the Apex conglomerate. *Id*. at 2; Dkt. #36-2 ("Lewis Dep.") at 17:16; Dkt. #35 ("Foit Decl.") at ¶ 7.

Counsel for Apex Seattle disclosed this sale to Plaintiff's counsel. *Id.*; Dkt. #38 at 4. However, Defendant Foit testified in his August 2020 deposition they planned to keep Apex Seattle "as a going concern" and "business," though he also stated in his July 2023 declaration that they reached sale terms with Great Day in "August or early September 2020." Dkt. #39-3 ("Foit Dep.") at 23:21-23 and Ex. 9 ("Foit Decl.") at ¶ 13; Dkt. #35 ("Foit Decl.") ¶ 6 ("In 2018, I started to seriously consider selling Apex Energy . . . In approximately November 2019, Great Day . . . offered to purchase"). The purchase agreement was executed by Defendants. Dkt. #39-11 ("Asset Purchase Agreement").

On November 18, 2020, Great Day wired the $23-24 million to Sciotoville Management, LLC ("Sciotoville"), who then wired portions to Apex Energy shareholders. Dkt. #35 ("Foit Decl.") at ¶ 10. Apex Seattle was allotted $436,307 of the purchase price. *Id.* at Ex. B.

After the sale, Apex Seattle had approximately $750,000 in its operating account. Dkt. #39-28 ("Foit Dep.") at 49:9-13 and Ex. 31. Sciotoville then transferred money to Apex Seattle for "wind down" operations because "Apex Seattle had few assets and little cash" (Dkt. #35 ("Foit Decl.") at ¶ 12). This included "over $180,000" between December 2020 and May 2021 attorney's fees incurred in the state litigation. Dkts. #34 at 7 and #43 at 17.

Sciotoville was created on May 26, 2020, and dissolved on November 5, 2024. Dkt. #39-29. It operated as a "management entity" that charged management fees from the company-owned stores, such as Apex Seattle. Dkt. #35 ("Foit Decl.") at ¶ 3. Defendants were the sole owners and managers of Sciotoville. Dkt. #39-28 ("Foit Dep.") at 37:16-22. Defendants also determined to put the sale proceeds from Great Day into Sciotoville's holding account. *Id.* at 18:22-25. Defendants also received payments from Sciotoville to their personal accounts. *Id.* at 19:1-5, 32:5-25, and 33:1-15. Along with the sale proceeds, Defendants also made the decision to transfer other Apex assets to Sciotoville to "put into one account so we [Defendants] could

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 4

just take care of stuff from one place rather than four or five." *Id*. at 40:3-7. This included a $650,000 transfer from Apex Seattle to Sciotoville on November 17, 2020, which included a $311,000 management fee. *Id*. at 39:1-25 and 40:1-15 (describing $650,000 transfer); Dkt. #44 ("Lewis Dep.") at 35:12-11 and 37:25-38:1-5 (describing $311,000 fee). The money transferred back to Apex Seattle for "wind down" operations came from this amount. Dkt. #43 at 20. Defendant Foit also testified that Apex Seattle had access to approximately $400,000 for post-sale costs. Dkt. #44 ("Foit Dep.") at 57:16-25 and 58:1-25.

Plaintiff alleges there is no genuine issue of material fact that the above transfers are fraudulent under Washington's Uniform Fraudulent Transfer Act ("UFTA"), RCW 19.40, and requests the Court enter a judgment for the amount of the state court judgment, plus interest and fees. Dkt. #38. Defendant alleges that there is no genuine issue of material fact that Plaintiff has no judiciable claim. Dkt. #34.

### III. DISCUSSION

#### A. Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S.

at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Analysis

#### a. Defendants' Motion

Defendants argue that they are entitled to summary judgment because Plaintiff fails to bring proper claims or identify any transfer between Apex Seattle and Defendants. Dkt. #34 at 8-13.

First, Defendants argue that "[c]laims arising under Washington's Wage Rebate Act . . . and claims to pierce the corporate veil are not judiciable claims under RCW 6.32.270" supplemental proceedings because Plaintiff "was required to assert these claims and name Foit and Lewis as defendants in their individual capacities in the underlying lawsuit." *Id*. at 10.

Plaintiff contends that Defendants "concede that [Plaintiff] Hubbard properly invoked the supplemental proceedings process and added Foit and Lewis to adjudicate his interest in property that could satisfy the Judgment." Dkt. #42 at 7. But Plaintiff contends that Defendants' argument that "there was no transfer of property between the judgment debtor Apex Seattle and" Defendants is "factually refuted by the financial records" and "legally irrelevant to the viability" of his claims. *Id*. This is because, as Plaintiff argues in his summary judgment motion, Defendants "used Sciotoville Management as essentially a shell corporation into which the two insiders [Defendants] fraudulently directed proceeds from the Great Day asset sale in an effort to shelter those assets from collection before a judgment could be rendered against Apex Seattle

in favor of [Plaintiff] Hubbard." Dkt. #38 at 9.

First, Defendants' assertion that Plaintiff was required to bring these claims against Defendants specifically in the underlying state suit is incorrect because this is unnecessary in this Court. "Federal courts generally find that alter ego is not a separate cause of action for which relief can be granted" but instead "serves as a theory to impose liability on an individual for the acts of a corporate entity." *Kantor* at *8 (quotes omitted) (quoting *Oginsky v. Paragon Props. of Costa Rica Ltd. Liab. Co.*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011). Thus, this argument fails.

"To pierce [or disregard] the corporate veil requires proof that (1) there was intentional use of the corporate form to violate or evade a duty and (2) such piercing is necessary to prevent an unjustified loss." *Kantor v. BigTip, Inc.*, No. C15-1871-MJP, 2018 WL 1612017, at *8 (W.D. Wash. Apr. 3, 2018) (citing *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410 (1982)). This requires "such a commingling of property rights or interests as to render it apparent that they are intended to function as one," as well as that "to regard them as separate would aid the consummation of a fraud or wrong upon others." *Id*. (quoting *J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 475 (1964)). As the Washington Court of Appeals states:

> Abuse of the corporate form, including any form of manipulation of the corporation to the stockholder's benefit and the creditor's detriment, satisfies the first prong of the corporate veil test. An intentional use of the corporation to evade a duty owed to another is established when a creditor shows that the liable corporation has been gutted and left without funds in order to avoid liability. As to the second prong, the party seeking relief must have actually been harmed such that disregard of the corporate form is necessary to achieve justice. The party seeking to pierce the corporate veil bears the burden of proof.

*Suess v. Nw. Timber & Dev., Inc.*, 24 Wn.2d 1010, 2022 WL 14297047, at *13 (2022) (inside quotations omitted).

It is an undisputed fact that Defendants wholly owned and managed Apex Seattle and

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 7

Sciotoville. Dkt. #39 ("Downs Decl.") at Exs. 2-4; Dkt. #35 ("Foit Decl.") at ¶ 5. Defendants themselves state in their Opposition that "Foit and Lewis are the insiders of Apex Seattle and Sciotoville Management," (Dkt. #43 at 17) in response to Plaintiff's description of Defendants' actions as a "transfer to an insider" (Dkt. #38 at 15). Defendants controlled Plaintiff's hiring, Plaintiff's wages, the decision to initiate a lawsuit against Plaintiff, the Apex conglomerate's sale, and everything relevant to this case. Dkts. #38 at 3; #39-6 ("Lasko Dep.") at 18:12-23; #39-3 ("Foit Dep.") at 19:14-16 and 23:21-23; #39-9 ("Foit Decl.") at ¶ 13; Dkt. #35 ("Foit Decl.") at ¶ 6; Dkt. #39-25 ("Foit Dep.") at 18:22-25, 19:1-5, 32:5-25, 33:1-15, and 40:3-7. Sciotoville was formed after the underlying state litigation commenced and disbursed shortly after. Dkt. #39-29. Defendants made the decision to use Sciotoville Management's holding account for the Apex sale funds from Great Day. Dkt. #39-2 ("Lewis Dep.") at 18:22-25 ("Q. By the way, who made the decision to use the Sciotoville Management holding account for these funds from Great Day? A. Probably me."). Defendants received salaries from the Apex conglomerate and payments, not salaries, from Sciotoville Management, and received lump sum payments from Sciotoville to their personal bank accounts for the Apex conglomerate sale. Dkt. #39-2 ("Lewis Dep.") at 32:1-25 and 33:1-12. This sale involved all of Apex Seattle's assets, causing its insolvency and alleged inability to pay the judgment amount owed to Plaintiff. Dkt. #34 at 6 ("the sale of the Apex conglomerate . . . included Apex Seattle's assets").

First, "liability under RCW 49.52.070 [Washington's Wage Rebate Act] does not turn on piercing the corporate veil" because it "imposes individual liability against an employer" or "vice principal" who "exercises control over the payment of funds and acts under that authority." *Durand v. HIMC Corp.*, 151 Wn. App. 818, 835 (2009). The Court's duty is to "liberally construe the wrongful withholding statute 'to advance the Legislature's intent to protect employee wages and assure payment.'" *Id.* (quoting *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

(1998)). Even with the abundance of evidence showing Defendants' use of their corporations to evade the judgment owed, Defendants as individuals are the parties-at-interest here, not the nominal corporations. As the Court stated in its prior Order:

> In the action at issue, Plaintiff seeks to recover from Defendants Foit and Lewis in their personal capacity, not Apex Seattle. Dkt. #11 at 15. Under the Uniform Voidable Transaction Act, invoked by Plaintiff to go after Defendants personally, "judgment may be entered against: (i) The first transferee of the asset or the person for whose benefit the transfer was made; or (ii) An immediate or mediate transferee of the first transferee . . . ." RCW 19.40.081(2)(a). Thus, it is exclusively Defendants who Plaintiff is seeking to recover from, not Apex Seattle, who is a nominal party.

Dkt. #21 at 6.

Given the above and taking all reasonable inferences in Plaintiff's favor as the non-moving party, the Court is unpersuaded by Defendants' argument that there is no identifiable property or transfer. Dkt. #34 at 10-13. Defendants state that Plaintiff "has not identified any property for which Apex Seattle may have a right of ownership . . . that is adverse" and that "[t]he only transfer that actually occurred was the transfer of sale proceeds . . . from Great Day to Foit and Lewis." *Id*. at 11 and 13. Whether other transfers exist will be discussed below, but it is clear to the Court that property of Defendants (because, again, the corporations are merely nominal here) has been identified, at minimum as the sale proceeds, and Plaintiff contends that Defendants owe him the judgment payment from these proceeds or other payments. Accordingly, the Court will deny Defendants' Motion.

### b. Plaintiff's Motion

Plaintiff asserts that he is entitled to summary judgment because there is no genuine issue of material fact that Defendants made the transfers at issue here with actual intent to defraud and/or those transfers were constructively fraudulent. Dkt. #38 at 13-18.

"The UFTA provides that a transfer "is voidable as to a creditor" if the debtor made the

transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" RCW 19.40.041(1)(a). This "actual intent to defraud must be demonstrated by 'clear and satisfactory proof.'" *Sedwick v. Gwinn*, 73 Wn. App. 879, 885 (1994) (quoting *Clearwater v. Skyline Constr. Co, Inc.*, Wn. App. 305, 321 (1992)). For actual intent:

> [C]onsideration may be given, among other factors, to whether:
>
> (a) The transfer or obligation was to an insider;
> (b) The debtor retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

RCW 19.40.041(2)(a)-(k).

An "insider" includes the debtor's general partner, a partnership, a corporation the debtor is a director or officer of or in control of, and a corporation debtor's director, officer, person in control, partnership, general partner, as well as an affiliate. RCW 19.40.011(8).

A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset," including "payment of money, release, lease, and creation of a lien or other encumbrances." RCW 19.40.040(17). A transfer can be "constructively fraudulent," without regard to intent, if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and if he "intended to . . . or believed or reasonably should have believed that the debtor would incur, debts

beyond" his "ability to pay as they became due." RCW 19.40.041(1)(b)(ii). "[C]onstructive fraud must be shown by 'substantial evidence.'" *Sedwick*, 73 Wn. App. at 855 (quoting *Clearwater*, 67 Wn. App. at 321)).

In sum, "a fraudulent transfer occurs where one entity transfers an asset to another entity, with the effect of placing the asset out of reach of a creditor, with either the intent to delay or hinder the creditor or with the effect of insolvency on the part of the transferring entity." *Thompson v. Hanson*, 168 Wn.2d 738, 745 (2009).

Plaintiff identifies three allegedly fraudulent transfers: (1) the Apex conglomerate sale proceeds of approximately $24 million from Great Day to Sciotoville; (2) a 2020 transfer of a $311,000 management fee from Apex Seattle to Sciotoville; and (3) a November 2020 transfer from Apex Seattle to Sciotoville for $650,000. Dkt. #38 at 8-13. Plaintiff lists many of the above factors or "badges of fraud" to establish Defendants' fraudulent intent. *Id*. at 15-17.

On the conglomerate sale, Defendants argue that these proceeds are not disputed between Apex Seattle and Defendants because Great Day did not have to pay Apex Seattle directly, nor was any amount allocated to Apex Seattle's value, thus Apex Seattle (the debtor) was not a part of this transaction. Dkt. #43 at 12-13.

On the management fee, Defendants argue that this "is not a separate 'transfer' but was rather an expense paid pursuant to the $650,000 transfer," thus they analyze these transactions together. *Id*. at 14. Defendants argue this occurred between Apex Seattle and Sciotoville, not Defendants, and "Sciotoville Management is a necessary party to this case" and that Plaintiff does not "decipher between Apex Seattle's and Sciotoville Management's intent." *Id*. at 15.

Defendants contend there was no actual intent to defraud because: (1) this amount was for management services and part of a "streamlined" effort to have money come from one source (Sciotoville) "to compensate Sciotoville and pay off Apex Seattle's remaining expenses, [thus]

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 11

there was adequate consideration for the transfer[;]" (2) "Sciotoville Management is not an insider of Apex Seattle . . . Foit and Lewis are the insiders of Apex Seattle and Sciotoville Management, but the transfer at issue was not made to" Defendants; (3) this transfer was not concealed; (4) the sale was considered before the underlying state litigation and had nothing to do with the lawsuit; (5) the money was for owed management fees with funds continuing to go to Apex Seattle for outstanding expenses during the wind down, thus no fraudulent intent to create insolvency exists; and finally (6) this transfer from November 2020 was not shortly before Apex Seattle incurred the judgment in August 2021. *Id*. at 16-19. Defendants also contend that no constructive fraud exists because Apex Seattle received reasonably equivalent value for its transfers to Sciotoville. *Id*. at 19-20.

Finally, Defendants argue that no evidence or record supports Plaintiff's assumption "that Foit and Lewis were subsequent transferees" or "that suggests the identified transfers were made for Foit and Lewis's benefit." *Id*. at 20-21.

First, for similar reasons given above (*see* Sec. III.B.a) the Court is unconvinced by Defendants' continued arguments of "it was our corporations, not us."

Second, many uncontested facts demonstrate badges of fraud. Defendants (as they themselves stated) are insiders of the involved corporations, namely the recipient Sciotoville; Defendants received payments to their individual accounts from the transfers; the transfers occurred during litigation; the transfers involved substantially all of Apex Seattle's assets and rendered Apex Seattle insolvent; and these large transfers occurred nine months before the judgment. Dkts. #53 at 17; #39-29; #39-18 ("Lewis Dep.") at 18:22-25, 32:1-25, and 33:1-12; and #34 at 6

Defendants' reasoning for adequate consideration is questionable, as they allege these were for "unpaid management fees incurred from 2018 through 2020[,]" but Sciotoville did not

exist until May 26, 2020. Furthermore, the "over $180,000 transferred back into Apex Seattle's bank account from December 2020 to May 2021 for it to pay outstanding expenses" (Dkt. #43 at 17) included payment to cover Apex Seattle's "attorneys' fees incurred in the underlying suit" (Dkt. #34 at 7) and occurred a mere three months before the jury verdict. And Apex Seattle's transfers did, in fact, render it insolvent and unable to pay the judgment, resulting in almost four years of post-judgement supplemental proceedings. Furthermore, as indicated by these transfers, Apex Seattle and Defendants were reasonably aware that a judgment could incur that Apex Seattle could not satisfy. *See* RCW 19.40.041(a)(2); *see also Clearwater* 67 Wn. App. at 323 (holding that payment benefiting a debtor's lender but not the plaintiff did not constitute adequate consideration). Defendants' actions after being added to these proceedings, including attempts to disqualify the trial judge, dismiss on jurisdictional grounds, ultimately removing the case to this Court, and their lack of denial (only challenging that Plaintiff "lacks evidence of Apex Seattle's" and "Great Day's intent" (Dkts. #46 at 9 and #43 at 15, 19, and 22)) also support a finding of intent to delay payment. *See* Dkt. #38 at 7 (citing exhibits). *see also Shelcon Constr. Grp, LLC v. Haymond*, 187 Wn. App. 1038, 2015 WL 3422289, at *9-10 (May 27, 2015) (affirming clear and satisfactory evidence of actual intent where defendant argued that transfers were not fraudulent but did not deny intent to defraud, and RCW 19.40.041 fraud factors were present). None of Defendants' assertions are "inconsistent with . . . actual intent to hinder, delay, or defraud creditors." *Shelcon Constr. Grp.* at *10. All of the above direct and circumstantial evidence points to these transfers being fraudulent or delay tactics, whether constructively or with actual intent, with no controverting evidence or reasonable argument from Defendants otherwise. Accordingly, the Court finds that no issue of material fact exists and will grant Plaintiff's Motion.

//

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 13

**C. Total Judgment**

The Washington trial court entered a total judgment of $532,636.16 and that the amount "shall bear interest at the rate of 12% per annum in post-judgment interest from the date of entry until paid in full." *See* Dkt. #39, ("Downs Decl."), Ex. 8. The date of entry was October 6, 2021, making the new amount $748,315.45[1]. With additional attorney's fees and costs from these proceedings, Plaintiff contends that the new judgment totals "approximately $900,000." *Id*.

Under Washington's Wage Rebate Act, "[a]ny employer and any officer, vice principal, or agent" who "violate[s] any of the provisions of RCW 49.52.050 (1) and (2)" by depriving an employee of wages "shall be liable" for the judgment and reasonable costs and attorney fees. *See* RCW 49.52.070. As shown, the trial court awarded attorney's fees and costs in the underlying litigation, thus it would follow that Plaintiff is entitled to reasonable fees and costs here. However, while Plaintiff's counsel estimates these additional fees and costs increase the total judgment to "approximately $900,000" and requests this amount here (*see* Dkts. #38 at 4 n.9 and #39, ("Downs Decl.,") at ¶ 9), none of Plaintiff's filings include a declaration of attorney's fees and costs. While the Court will not award attorney's fees and costs for these sub-proceedings at this time, Plaintiff may file a motion requesting these fees and costs following this Order.

## IV.   CONCLUSION

Having considered the instant Motions, responsive briefings, declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants Foit's and Lewis' Motion for Summary Judgment, Dkt. #34, is DENIED.

(2) Plaintiff Hubbard's Motion for Summary Judgment, Dkt. #38, is GRANTED.

(3) The underlying judgment plus interest shall be entered against Defendants Foit and Lewis

---

[1] Since the noting date of Plaintiff's Motion was in April 2025, the Court calculates three years of post-judgment interest.

for a total Judgment of $748,315.45.

(4) Plaintiff shall file a motion for attorney's fees and costs for these proceedings **by September 30, 2025**.

(5) All pending motion are STRICKEN. This case is CLOSED.

DATED this 22nd day of September, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE